***PRELIMINARY PRINT***

VOLUME 602 U. S. PART 1
PAGES 268–285

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

JUNE 6, 2024

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

## TRUCK INSURANCE EXCHANGE *v.* KAISER GYPSUM CO., INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 22–1079.   Argued March 19, 2024—Decided June 6, 2024

Petitioner Truck Insurance Exchange is the primary insurer for companies that manufactured and sold products containing asbestos.   Two of those companies, Kaiser Gypsum Co. and Hanson Permanente Cement (Debtors), filed for Chapter 11 bankruptcy after facing thousands of asbestos-related lawsuits.   As part of the bankruptcy process, the Debtors filed a proposed reorganization plan (Plan).   That Plan creates an Asbestos Personal Injury Trust (Trust) under 11 U. S. C. § 524(g), a provision that allows Chapter 11 debtors with substantial asbestos-related liability to fund a trust and channel all present and future asbestos-related claims into that trust.   Truck is contractually obligated to defend each covered asbestos personal injury claim and to indemnify the Debtors for up to $500,000 per claim.   For their part, the Debtors must pay a $5,000 deductible per claim, and assist and cooperate with Truck in defending the claims.   The Plan treats insured and uninsured claims differently, requiring insured claims to be filed in the tort system for the benefit of the insurance coverage, while uninsured claims are submitted directly to the Trust for resolution.

   Truck sought to oppose the Plan under § 1109(b) of the Bankruptcy Code, which permits any "party in interest" to "raise" and "be heard on any issue" in a Chapter 11 bankruptcy.   Among other things, Truck argues that the Plan exposes it to millions of dollars in fraudulent claims because the Plan does not require the same disclosures and authorizations for insured and uninsured claims.   Truck also asserts that the Plan impermissibly alters its rights under its insurance policies.   The District Court confirmed the Plan.   It concluded, among other things, that Truck had limited standing to object to the Plan because the Plan was "insurance neutral," *i. e.*, it did not increase Truck's prepetition obligations or impair its contractual rights under its insurance policies.   The Fourth Circuit affirmed, agreeing that Truck was not a "party in interest" under § 1109(b) because the plan was "insurance neutral."

*Held*: An insurer with financial responsibility for bankruptcy claims is a "party in interest" under § 1109(b) that "may raise and may appear and be heard on any issue" in a Chapter 11 case.   Pp. 277–285.

Syllabus

(a) Section 1109(b)'s text, context, and history confirm that an insurer such as Truck with financial responsibility for a bankruptcy claim is a "party in interest" because it may be directly and adversely affected by the reorganization plan.   Pp. 277–282.

(1) Section 1109(b)'s text is capacious.   To start, it provides an illustrative but not exhaustive list of parties in interest, all of which are directly affected by a reorganization plan either because they have a financial interest in the estate's assets or because they represent parties that do.   This Court has observed that Congress uses the phrase "party in interest" in bankruptcy provisions when it intends the provision to apply "broadly."   *Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.*, 530 U. S. 1, 7.   This understanding aligns with the ordinary meaning of the terms "party" and "interest," which together refer to entities that are potentially concerned with, or affected by, a proceeding.   The historical context and purpose of § 1109(b) also support this interpretation.   Congress consistently has acted to promote greater participation in reorganization proceedings.   That expansion of participatory rights continued with the enactment of § 1109(b).   Broad participation promotes a fair and equitable reorganization process.   Pp. 277–281.

(2) Applying these principles, insurers such as Truck are parties in interest.   An insurer with financial responsibility for bankruptcy claims can be directly and adversely affected by the reorganization proceedings in myriad ways.   In this case, for example, Truck will have to pay the vast majority of the Trust's liability, and § 524(g)'s channeling injunction, which stays any action against the Debtors, means that Truck would stand alone in carrying that financial burden.   According to Truck, however, a plan that lacks the disclosure requirements for the insured claims risks exposing Truck to millions of dollars in fraudulent tort claims.   The Government frames Truck's interest slightly differently, but the result is the same: Where a proposed plan "allows a party to put its hands into other people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate objections addressed."   *In re Global Indus. Technologies, Inc.*, 645 F. 3d 201, 204.

Providing Truck an opportunity to be heard is consistent with § 1109(b)'s purpose of promoting a fair and equitable reorganization process.   Here, the Plan eliminates the Debtors' ongoing liability, and claimants similarly have little incentive to propose barriers to their ability to recover from Truck.   Truck may well be the only entity with an incentive to identify problems with the Plan.   Pp. 281–282.

(b) The Court of Appeals looked exclusively at whether the Plan altered Truck's contract rights or its "quantum of liability."   This approach, known as the "insurance neutrality" doctrine, is conceptually

wrong and makes little practical sense. Conceptually, the doctrine conflates the merits of an objection with the threshold party in interest inquiry. The § 1109(b) inquiry asks whether the reorganization proceedings might affect a prospective party, not how a particular reorganization plan actually affects that party. Practically, the doctrine is too limited in its scope. By focusing on the insurer's prepetition obligations and policy rights, the doctrine wrongly ignores all the other ways in which bankruptcy proceedings and reorganization plans can alter and impose obligations on insurers and debtors. The fact that Truck's financial exposure may be directly and adversely affected by a plan is sufficient to give Truck a right to voice its objections. Finally, in resisting the text of § 1109(b), the Debtors emphasize the risks of allowing "peripheral parties" to derail a reorganization. This "parade of horribles" argument cannot override the statute's text, and in any event, § 1109(b) provides parties in interest only an opportunity to be heard— not a vote or a veto in the proceedings. In all events, the Court today does not opine on the outer bounds of § 1109. Difficult cases may require courts to evaluate whether truly peripheral parties have a sufficiently direct interest to be heard. This case is not one of them because insurers such as Truck with financial responsibility for claims are not peripheral parties. Pp. 283–284.

60 F. 4th 73, reversed and remanded.

Sotomayor, J., delivered the opinion of the Court, in which all other Members joined, except Alito, J., who took no part in the consideration or decision of the case.

*Allyson N. Ho* argued the cause for petitioner. With her on the briefs were *Russell H. Falconer, Elizabeth A. Kiernan, Stephen J. Hammer, Jonathan C. Bond, David W. Casazza,* and *Addison W. Bennett.*

*Anthony A. Yang* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Prelogar, Principal Deputy Assistant Attorney General Boynton, Deputy Solicitor General Gannon, Mark B. Stern,* and *Brian J. Springer.*

*C. Kevin Marshall* argued the cause for debtor respondents. With him on the brief were *Alexis Zhang, Gregory M. Gordon,* and *Mark A. Nebrig. David C. Frederick* argued the cause for claimant respondents. With him on the

brief were *Joshua D. Branson*, *Kevin C. Maclay*, *Todd E.
Phillips*, *James P. Wehner*, *Lucas H. Self*, *Katelin C. Zen-
deh*, *Sara (Sally) W. Higgins*, *Edwin J. Harron*, *Sharon M.
Zieg*, *Travis G. Buchanan*, *Robert M. Horkovich*, and *Felton
E. Parrish*.*

JUSTICE SOTOMAYOR delivered the opinion of the Court.

The Bankruptcy Code allows any "party in interest" to
"raise" and "be heard on any issue" in a Chapter 11 bank-
ruptcy. 11 U. S. C. § 1109(b). The question in this case is
whether an insurer with financial responsibility for a bank-
ruptcy claim is a "party in interest" under this provision.

Truck Insurance Exchange (Truck) is the primary insurer
for companies that manufactured and sold products contain-
ing asbestos. Those companies filed for Chapter 11 bank-
ruptcy after facing thousands of asbestos-related lawsuits.
Truck is obligated to pay up to $500,000 per asbestos claim
covered under its insurance contracts with the companies.
Truck sought to object to the companies' bankruptcy reorga-
nization plan primarily because the plan lacked disclosure
requirements that Truck thought could save it from paying
millions of dollars in fraudulent claims.

The Court of Appeals concluded that Truck was not a
"party in interest" because the reorganization plan was "in-
surance neutral"; that is, the plan neither increased Truck's
prepetition obligations nor impaired its rights under the in-

---

*\**Caroline C. Lindsay* filed a brief for Anthony J. Casey et al. as *amici
curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American
Association for Justice by *Robert S. Peck*, *Sean Domnick*, and *Jeffrey R.
White*; for Bankruptcy Experts by *Jonathan S. Massey* and *Matthew M.
Collette*; for Co-Chairs of the American Bankruptcy Institute's Commis-
sion To Study the Reform of Chapter 11 by *Robert J. Keach* and *Albert
Togut*; and for United Policyholders by *Colin E. Wrabley* and *Ann V.
Kramer*.

*Laura A. Foggan* filed a brief for the American Property Casualty In-
surance Association et al. as *amici curiae*.

surance contracts. This Court disagrees. The insurance neutrality doctrine conflates the merits of an insurer's objection with the threshold §1109(b) question of who qualifies as a "party in interest." Section 1109(b) asks whether the reorganization proceedings might directly affect a prospective party, not how a particular reorganization plan actually affects that party.

Truck is a "party in interest" under §1109(b). An insurer with financial responsibility for a bankruptcy claim is sufficiently concerned with, or affected by, the proceedings to be a "party in interest" that can raise objections to a reorganization plan. Section 1109(b) grants insurers neither a vote nor a veto; it simply provides them a voice in the proceedings.

## I

### A

Bankruptcy offers individuals and businesses in financial distress a fresh start to reorganize, discharge their debts, and maximize the property available to creditors. "Chapter 11 of the Bankruptcy Code enables a debtor company to reorganize its business under a court-approved plan governing the distribution of assets to creditors." *U. S. Bank N. A.* v. *Village at Lakeridge, LLC*, 583 U. S. 387, 389 (2018). This plan, which is primarily the product of negotiations between the debtor and creditors, "govern[s] the distribution of valuable assets from the debtor's estate and often keep[s] the business operating as a going concern." *Czyzewski* v. *Jevic Holding Corp.*, 580 U. S. 451, 455 (2017). Chapter 11 strikes "a balance between a debtor's interest in reorganizing and restructuring its debts and the creditors' interest in maximizing the value of the bankruptcy estate." *Florida Dept. of Revenue* v. *Piccadilly Cafeterias, Inc.*, 554 U. S. 33, 51 (2008).

Section 1109(b) of the Bankruptcy Code addresses which stakeholders can participate, and to what extent, in these reorganization proceedings:

"A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

A "party in interest" enjoys certain rights in the proceedings, including the ability to file a Chapter 11 plan when a trustee has been appointed, 11 U. S. C. § 1121(c)(1); request the appointment or removal of a trustee, §§ 1104, 1105; challenge the good faith of persons voting to approve a plan, § 1126(e); and object to confirmation of a plan, § 1128(b).

B

This case concerns the Chapter 11 reorganization of companies facing overwhelming asbestos liability. Exposure to asbestos, a natural mineral used in industrial work, has led to devastating health consequences for millions of people. See National Cancer Institute, Asbestos Exposure and Cancer Risk (Nov. 29, 2021). Companies filing for bankruptcy because of asbestos liability face unique challenges. " '[B]ecause of a latency period that may last as long as 40 years for some asbestos related diseases, a continuing stream of claims can be expected.' " *Amchem Products, Inc.* v. *Windsor*, 521 U. S. 591, 598 (1997). Claims therefore arrive on a long and unpredictable timeline. If bankruptcy proceedings resolved only existing asbestos liability, companies would face unknown future liability and claimants might be unable to recover just because their injuries had not yet manifested.

Congress responded to these challenges in § 524(g) of the Bankruptcy Code. This section allows a Chapter 11 debtor with substantial asbestos-related liability to establish and fund a trust that assumes the debtor's liability for "damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products." § 524(g)(2)(B)(i)(I). Section 524(g) then channels all present and future claims into the trust by "enjoin[ing] entities from taking legal action for

the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery" for claims "to be paid in whole or in part by [the] trust." Finally, § 524(g) imposes safeguards, including the appointment of a representative to protect the interest of future claimants, § 524(g)(4)(B)(i); treatment of "present claims and future demands that involve similar claims in substantially the same manner," § 524(g)(2)(B)(ii)(V); and approval from at least 75% of current claimants, § 524(g)(2)(B)(ii)(IV)(bb). This all "ensure[s] that health claims can be asserted only against the Trust and that [the company's] operating entities will be protected from an onslaught of crippling lawsuits that could jeopardize the entire reorganization effort." *Kane* v. *Johns-Manville Corp.*, 843 F. 2d 636, 640 (CA2 1988). It also ensures that "future claimants" are "treated identically to the present claimants." *Ibid.*

### C

Kaiser Gypsum Company, Inc., and its parent company, Hanson Permanente Cement, Inc., manufactured and sold products that, at some point, contained asbestos. The companies faced tens of thousands of asbestos-related lawsuits as a result. To resolve their liabilities, both companies (Debtors) filed for Chapter 11 bankruptcy. The Bankruptcy Court in turn appointed representatives for the current and future asbestos claimants (Claimants). The Debtors eventually agreed on a proposed reorganization plan (Plan) with the Claimants, various creditors and government agencies, and all but one of their insurance providers.

The Plan creates a § 524(g) Asbestos Personal Injury Trust (Trust) that assumes the Debtors' liabilities and is funded by the Debtors and their parent company. The Plan also transfers "all of the Debtors' rights" under their insurance contracts to the Trust, including "all rights to coverage and insurance proceeds." App. to Pet. for Cert. 181a.

Truck was the Debtors' primary insurer. It issued policies that covered the Debtors from 1965 through 1983.

Truck is contractually obligated to defend each covered asbestos personal injury claim and typically indemnify the Debtors for up to $500,000 per claim. The Debtors have to pay a $5,000 deductible per claim, and assist and cooperate with Truck in defending against the claims. The Plan required the Bankruptcy Court to make a finding that the Debtors' conduct in the bankruptcy proceedings neither violated this assistance-and-cooperation duty nor breached any implied covenant of good faith and fair dealing (Plan Finding).

The Plan treats insured and uninsured claims differently. Insured claims are filed "in the tort system to obtain the benefit of [the] insurance coverage." *Id.*, at 241a. Truck has to defend these lawsuits, and if the claimant obtains a favorable judgment, the Trust pays the deductible and Truck pays up to $500,000 per claim. Uninsured claims, however, are submitted directly to the Trust for resolution. As part of that process, claimants have to identify "all other [related] claims" and file a release authorizing the Trust to obtain documentation from other asbestos trusts about other submitted claims. See 2 App. 428–431. These disclosure requirements are intended to reduce fraudulent and duplicative claims.[1]

Truck was the only party involved in the bankruptcy that did not support the Plan. It advanced three main objections. First, and most relevant here, the Plan was not "pro-

---

[1] Without these requirements, Truck contends, it can be difficult to trace an asbestos injury to a particular exposure or to identify earlier claims against other entities. Knowing a claimant's other exposures and claims helps prevent inflated recoveries. The Debtors and Claimants contend that Truck was not entitled to these disclosures before bankruptcy and could still obtain them in discovery in the tort system. That ignores the practical and legal consequences of the Debtors' bankruptcy petition. See *infra*, at 281. Indeed, in recent years, "nearly every Section 524(g) trust has included almost identical fraud-prevention measures to protect debtors and their insurers." Brief for Petitioner 10. In any event, these are merits arguments on which Truck is entitled to be heard.

posed in good faith," 11 U. S. C. § 1129(a)(3), "because it reflected a collusive agreement between the Debtors and the claimant representatives," and did not require "the same disclosures and authorizations" for insured and uninsured the claims, *In re Kaiser Gypsum Co.*, 60 F. 4th 73, 80 (CA4 2023). This "disparate treatment would expose [Truck] to millions of dollars in fraudulent tort claims." *Ibid.* Second, the Plan Finding impermissibly altered Truck's rights under its insurance policies "by relieving the Debtors of their assistance-and-cooperation obligations and by barring Truck from raising the Debtors' bankruptcy conduct as a defense in future coverage disputes." *Ibid.* Third, the Trust did not comply with various provisions of § 524(g), including the requirement to "deal equitably with claims and future demands," as required by § 524(g)(2)(B)(ii)(III).

Following the Bankruptcy Court's recommendation, the District Court confirmed the Plan. Relevant here, it concluded that "Truck has limited standing to object to the Plan solely on the grounds that the Plan is not insurance neutral." *In re Kaiser Gypsum Co.*, 2021 WL 3215102, \*27 (WDNC, July 28, 2021). The court found, however, that the Plan was "insurance neutral" because it "neither increase[d] Truck's obligations nor impair[ed] its prepetition contractual rights under the Truck Policies. The Plan simply restore[d] Truck to its position immediately prior to the Petition Date." *Id.*, at \*26. The court also rejected Truck's challenge to the Plan Finding because the Plan expressly provided that the Debtors "will continue to fulfill their cooperation obligations arising under" the policies. *Id.*, at \*27.

The Fourth Circuit affirmed, agreeing with the District Court that Truck was not a "party in interest" under § 1109(b) because the Plan did not "increase [Truck's] prepetition obligations or impair [Truck's] pre-petition policy rights." 60 F. 4th, at 83. In other words, the Plan was "insurance neutral" because it did not "alte[r] Truck's pre-bankruptcy 'quantum of liability'" given that Truck was "not

entitled" to the "fraud-prevention measures" it sought. *Id.*, at 87. The court also concluded that the Plan Finding did not alter Truck's contractual rights and that the Debtors did not "breach their assistance-and-cooperation obligations or the implied covenant of good faith and fair dealing." *Id.*, at 84.

This Court granted certiorari to decide whether an insurer with financial responsibility for a bankruptcy claim is a "party in interest" under §1109(b). 601 U. S. —— (2023).[2]

## II

Courts must determine on a case-by-case basis whether a prospective party has a sufficient stake in reorganization proceedings to be a "party in interest." Section 1109(b)'s text, context, and history confirm that an insurer such as Truck with financial responsibility for a bankruptcy claim is a "party in interest" because it may be directly and adversely affected by the reorganization plan.

### A

Section 1109(b) permits any "party in interest" to "appear and be heard on any issue" in a Chapter 11 proceeding. This text is capacious. To start, §1109(b) provides an illustrative but not exhaustive list of parties in interest. See *supra*, at 273. A common thread uniting the seven listed parties is that each may be directly affected by a reorganization plan either because they have a financial interest in the estate's assets (the debtor, creditor, and equity security holder) or because they represent parties that do (a creditors' committee, an equity security holders' committee, a trustee, and an indenture trustee). "The general theory behind [§1109(b)] is that anyone holding a direct financial stake in the outcome of the

---

[2] The courts below also addressed whether Truck is a "party in interest" on the separate basis that it is "a creditor." 11 U. S. C. §1109(b). Because this Court holds that Truck is a "party in interest" based on its insurer status, the Court does not address alternative arguments based on Truck's creditor status.

case should have an opportunity (either directly or through an appropriate representative) to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest." 7 Collier on Bankruptcy ¶1109.01 (16th ed. 2023). This understanding aligns with this Court's observation that Congress uses the phrase "'party in interest'" in bankruptcy provisions when it intends the provision to apply "broadly." *Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.*, 530 U. S. 1, 7 (2000) (quoting 11 U. S. C. §502(a)).

The ordinary meaning of the terms "party" and "interest" confirms this. "Party" in this context is best understood as "[a] person who constitutes or is one of those who compose . . . one or [the] other of the two sides in an action or affair; one concerned in an affair; a participator; as, a *party* in interest." Webster's New International Dictionary 1784 (2d ed. 1949). "Interest" is best understood as "[c]oncern, or the state of being concerned or affected, esp[ecially] with respect to advantage, personal or general." *Id.*, at 1294. The plain meaning of the phrase thus refers to entities that are potentially concerned with or affected by a proceeding.[3] The parties in this case land on roughly this same definition. See Brief for Petitioner 26 (defining "party in interest" as anyone that may be "'directly and adversely affected' by the reorganization" (alterations omitted)); Brief for Debtor-Side Respondents 29 ("To the extent Truck acknowledges that a 'party in interest' under Section 1109(b) is someone 'directly and adversely affected by the reorganization,' the parties are

---

[3] Legal dictionaries from the time of §1109(b)'s enactment and onward similarly define the phrase "party in interest." See Ballentine's Law Dictionary 920 (3d ed. 1969) (defining "party in interest" as a "party to an action who has an actual interest in the controversy, as distinguished from a nominal party"); cf. Black's Law Dictionary 1122 (6th ed. 1990) ("Primary meaning ascribed the term 'party in interest' in bankruptcy cases is one whose pecuniary interest is directly affected by the bankruptcy proceeding").

in violent agreement"); Brief for Claimant Respondents 1 (similar).[4]

The historical context and purpose of §1109(b) also support this interpretation. Congress consistently has acted to promote greater participation in reorganization proceedings. Section 77B of the Bankruptcy Act of 1898, for example, provided debtors the right to be heard on all issues, but limited the right of creditors and stockholders to only certain issues. See 11 U. S. C. §207 (1946 ed.). Section 206 of the Bankruptcy Act of 1938 broadened participation and provided that "[the] debtor, the indenture trustees, and any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a proceeding under this chapter." §606. Although the 1938 Act allowed a "party in interest" to intervene "for cause shown," it permitted only the four named parties to intervene as of right. Still, the Advisory Committee's Note to Former Chapter X, Bkrtcy. Rule 10–210(a) (1976), which implemented §206, noted that the section "was originally enacted to broaden the practice that had

––––––––

[4] The phrase "party in interest" appears in other statutory contexts. The Court's analysis of the term today does not apply across all other, unrelated statutory schemes. The term's meaning elsewhere will turn on the text, structure, context, history, and purpose of those statutory provisions, just as it does here. Still, precedent confirms that this Court's interpretation of §1109(b) is not an outlier. See, *e.g.*, *Western Pacific California R. Co.* v. *Southern Pacific Co.*, 284 U. S. 47, 51–52 (1931) (competitor railroad was a "party in interest" under the Transportation Act of 1920 because the challenged railroad expansion had the potential to "directly and adversely affect the complainant's welfare by bringing about some material change in the transportation situation"); *L. Singer & Sons* v. *Union Pacific R. Co.*, 311 U. S. 295, 304 (1940) (food vendors were not a "party in interest" under the Transportation Act of 1920 because a "person engaged in business within or adjacent to a public market" was only "indirectly and consequentially affected" by a railroad "seeking only to serve a competing market by means of an extension"); *Alton R. Co.* v. *United States*, 315 U. S. 15, 19–20 (1942) (railroad companies were "parties in interest" under the Motor Carrier Act of 1935 because they were "directly affected by competition with the motor transport industry").

developed under former § 77 . . . . This broader concept was to insure fair representation and to prevent excessive control over the proceedings by insider groups." 11 U. S. C. App., p. 1445 (1976 ed.).

In 1978, Congress enacted the Bankruptcy Code containing § 1109(b), which continued the expansion of participatory rights in reorganization proceedings. Congress moved from an exclusive list to the general and capacious term "party in interest," accompanied by a nonexhaustive list of parties in interest. These parties "may raise and may appear and be heard on any issue." 11 U. S. C. § 1109(b). "Section 206 . . . and Chapter X Rule 10–210(a), the predecessor provisions of section 1109(b) of the Code, constituted an effort to encourage and promote greater participation in reorganization cases. . . . Section 1109(b) continues in this tradition and should be understood in the same way." *In re Amatex Corp.*, 755 F. 2d 1034, 1042 (CA3 1985).

Now consider the purpose of § 1109(b). Broad participation promotes a fair and equitable reorganization process. The Bankruptcy Code seeks to prevent "the danger inherent in any reorganization plan proposed by a debtor" that "the plan will simply turn out to be too good a deal for the debtor's owners." *Bank of America Nat. Trust and Sav. Assn.* v. *203 North LaSalle Street Partnership*, 526 U. S. 434, 444 (1999); see also *ibid.* (discussing Congress's concern that " 'a few insiders, whether representatives of management or major creditors, [could] use the reorganization process to gain an unfair advantage' "). Section 1109(b) addresses this concern. "[D]rafters and early commentators hoped that an expansive definition [of "party in interest" in § 1109(b)] would allow a broad range of individual and minority interests to intervene in Chapter 11 cases, and expressly warned that undue restrictions on who may be a party in interest might enable dominant interests to control the restructuring process." D. Dick, The Chapter 11 Efficiency Fallacy, 2013 B. Y. U. L. Rev. 759, 774–775 (2014). In short, § 1109(b) was

"designed to serve . . . the policies of inclusion underlying the chapter 11 process."   7 Collier on Bankruptcy ¶1109.02.

B

Applying these principles, the Court holds that insurers such as Truck with financial responsibility for bankruptcy claims are parties in interest.

Bankruptcy reorganization proceedings can affect an insurer's interests in myriad ways.   A reorganization plan can impair an insurer's contractual right to control settlement or defend claims.   A plan can abrogate an insurer's right to contribution from other insurance carriers.   Or, as alleged here, a plan may be collusive, in violation of the debtor's duty to cooperate and assist, and impair the insurer's financial interests by inviting fraudulent claims.   The list goes on. See, *e.g.*, Brief for American Property Casualty Insurance Association et al. as *Amici Curiae* 16–17 (American Property Brief) ("For example, a plan that purports to maintain an insurer's coverage defenses could nonetheless allow claims at amounts far above their actual value and out of line with the claimants' injuries or the payment of claims for which little to no proof of injury is required").   An insurer with financial responsibility for bankruptcy claims can be directly and adversely affected by the reorganization proceedings in these and many other ways, making it a "party in interest" in those proceedings.

Take Truck, for example.   Truck will have to pay the vast majority of the Trust's liability—up to $500,000 per claim for thousands of covered asbestos-injury claims.   The proposed Plan would have Truck stand alone in carrying the financial burden, because the §524(g) channeling injunction "permanently and forever stay[s], restrain[s] and enjoin[s]" any action against Debtors, App. to Pet. for Cert. 178a, and other "[e]ntities, other than Asbestos Insurers," *id.*, at 201a.   According to Truck, however, a plan that lacks the disclosure requirements for the insured claims risks exposing Truck

"to millions of dollars in fraudulent tort claims."    60 F. 4th, at 80.    That potential financial harm—attributable to Truck's status as an insurer with financial responsibility for bankruptcy claims—gives Truck an interest in bankruptcy proceedings and whatever reorganization plan is proposed and eventually adopted.

The Government frames Truck's interest in a slightly different but substantively identical way.    According to the Government, Truck is a party in interest because it "is a party to a contract with the debtor that is property of the estate and may be interpreted, assigned, or otherwise affected by the Chapter 11 proceedings."    Brief for United States as *Amicus Curiae* 13.    This is just another side of the same coin.    Those executory contracts are the ones that give insurers an interest in the proceedings and, in this case, make Truck financially responsible for the bankruptcy claims.    So, whether Truck's direct interest is framed as its executory contracts or instead its obligations resulting from those contracts, it cashes out in the same way: Where a proposed plan "allows a party to put its hands into other people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate objections addressed." *In re Global Indus. Technologies, Inc.*, 645 F. 3d 201, 204 (CA3 2011).

This opportunity to be heard is consistent with § 1109(b)'s purpose.    In this case, neither the Debtors nor the Claimants have an incentive to limit the postconfirmation cost of defending or paying claims.    For the Debtors, the Plan eliminates all of their ongoing liability.    The Claimants similarly have little incentive to propose barriers to their ability to recover from Truck.    Truck may well be the only entity with an incentive to identify problems with the Plan.    This "realignment of the insured's economic incentives . . . makes participation in the bankruptcy by insurers—who will ultimately be asked to foot the bill for most or all of those claims—critical."    American Property Brief 15–16.

## III

The Court of Appeals looked exclusively to whether the Plan altered Truck's contract rights or its "quantum of liability." Under this approach, known as the "insurance neutrality" doctrine, courts ask if the plan "increase[s] the insurer's pre-petition obligations or impair[s] the insurer's pre-petition policy rights." 60 F. 4th, at 83, 87. This doctrine is conceptually wrong and makes little practical sense.

Conceptually, the insurance neutrality doctrine conflates the merits of an objection with the threshold party in interest inquiry. The § 1109(b) inquiry asks whether the reorganization proceedings might affect a prospective party, not how a particular reorganization plan actually affects that party. Indeed, § 1109(b) cannot "depend on a plan-specific rule—that standard would be unusable for the Code provisions empowering a party in interest to request acts unrelated to a specific plan or that occur before a plan is confirmed or even proposed." Reply Brief 11; see also *supra*, at 273 (a party in interest, for example, can file a Chapter 11 plan when a trustee has been appointed or request the appointment and removal of a trustee). Practically, the insurance neutrality doctrine is too limited in its scope. It zooms in on the insurer's prepetition obligations and policy rights. That wrongly ignores all the other ways in which bankruptcy proceedings and reorganization plans can alter and impose obligations on insurers. See *supra*, at 281–282.

In defending the decision below, the Debtors and Claimants contend that Truck faces similar exposure in the tort system before and after bankruptcy, in part because Truck was not entitled to the disclosure provisions before the bankruptcy. That may be so, but this argument suffers from the same flaw identified above—at bottom, it concerns the merits of whether the Plan should include the disclosure provisions for insured claims in accordance with §§ 524(g) and 1129. See *supra*, at 275–276 (describing Truck's objections). Whether and how the particular proposed Plan here affects Truck's

prepetition and postpetition obligations and exposure is not the question. The fact that Truck's financial exposure may be directly and adversely affected by a plan is sufficient to give Truck (and other insurers with financial responsibility for bankruptcy claims) a right to voice its objections in reorganization proceedings. The Debtors' and Claimants' argument also ignores the practical and legal consequences of the Debtors' bankruptcy proceedings and reorganization plan. They transformed the Debtors' asbestos liabilities into bankruptcy claims that Truck will now have to indemnify through the Trust without the protections of disclosure requirements in place for uninsured claims filed directly with the Trust.

Finally, in resisting the text of § 1109(b), the Debtors emphasize the risk of allowing "'peripheral parties' to derail a reorganization." Brief for Debtor-Side Respondents 33. To start, a "parade of horribles" argument generally cannot "surmount the plain language of the statute." *Arthur Andersen LLP* v. *Carlisle*, 556 U. S. 624, 629 (2009). Moreover, § 1109(b) provides parties in interest only an opportunity to be heard—not a vote or a veto in the proceedings.[5] In all events, the Court today does not opine on the outer bounds of § 1109. Of course, a party in interest is "not intended to include literally every conceivable entity that may be involved in or affected by the chapter 11 proceedings." 7 Collier on Bankruptcy ¶ 1109.03. There may be difficult cases that require courts to evaluate whether truly peripheral parties have a sufficiently direct interest. This case is not one of them. Insurers such as Truck with financial responsibility for claims are not peripheral parties.

---

[5] Bankruptcy courts also have equitable discretion to control participation in a proceeding. See, *e. g.*, 11 U. S. C. § 105(a) ("No provision of [the Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process").

Opinion of the Court

\*      \*      \*

Section 1109(b) provides parties in interest a voice in bankruptcy proceedings.   An insurer with financial responsibility for bankruptcy claims is a "party in interest" that may object to a Chapter 11 plan of reorganization.

The judgment of the United States Court of Appeals for the Fourth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE ALITO took no part in the consideration or decision of this case.

Page Proof Pending Publication

Reporter's Note

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

p. 269, line 16 from bottom: "uninsured" is replaced with "insured"
p. 280, line 1: "upon" is replaced with "under"
p. 281, last line: "uninsured" is replaced with "insured"